**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CAPITAL CROSSING SERVICING COMPANY LLC, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| MAPFRE PRAICO INSURANCE COMPANY, | <u>**JURY TRIAL DEMANDED**</u> |
| Defendant. | |

## I.     INTRODUCTION

1.     This action arises out of the failure and refusal of MAPFRE Praico Insurance Company ("MAPFRE") to honor its obligations pursuant to an insurance policy (the "Policy") it sold to Plaintiff Capital Crossing Servicing Company LLC ("Capital Crossing") in connection with substantial damages sustained by properties in Puerto Rico, insured under the Policy, when Hurricane Maria hit the island in September 2017.

2.     Capital Crossing submitted claims for 228 insured locations.  Now, over a year after most of those claims were submitted, MAPFRE has made no payment whatsoever on almost half of them.  To the extent MAPFRE has made payments, the majority were long after the claims were submitted and well below the amount owed on the submitted claims.

3.      The submitted claims have valued losses in excess of $39,600,000.00. MAPFRE's total accepted payment (to date) for these claims barely exceeds $2,607,462.62.

4.     Not only has MAPFRE failed and refused to make reasonable and timely payments, the checks it has issued were designated as full and final payments for the loss locations in question, even though they represent just a small fraction of the amount claimed and

owed.  MAPFRE refuses to agree that Capital Crossing may cash the checks without prejudicing its right to pursue the balance owed on the claims for which payment is being made.  Due to MAPFRE's bad faith conduct of considering the payment of certain undisputed amounts a release of other covered claims, many of the "payments" made by MAPFRE are illusory because Capital Crossing cannot cash the checks without risking the forfeiture of most of the claimed amount to which Capital Crossing is entitled.

5.      MAPFRE has offered no satisfactory explanation or justification for its conduct in handling Capital Crossing's claims.

6.      Capital Crossing seeks all general, special, consequential, and punitive damages, attorneys' fees, pre- and post-judgment interest, and all penalties to which it is entitled under statute and civil and common law, including relief for MAPFRE's breach of contract and violations of Mass. Gen. Laws c. 93A, Mass. Gen. Laws c. 176D, P.R. Laws Ann. tit. 26, § 2702, P.R. Laws Ann. tit. 26, § 2716a, and the implied covenant of good faith and fair dealing implicit in the Policy.

## II.      JURISDICTION AND VENUE

7.      This Court has original jurisdiction over the claims in this Complaint pursuant to 28 U.S.C. §1332(a)(1) as the amount in controversy exceeds $75,000.00 exclusive of interest and is between citizens of different states.

8.      Venue is proper in this district pursuant to 28 U.S.C. §1391(a)(2) as a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this district.

9.      This Court has jurisdiction over MAPFRE pursuant to Mass. Gen. Laws c. 223A, § 3(a), (b), and (d), as Capital Crossing's claims arise from MAPFRE transacting business

and contracting to supply insurance in this Commonwealth and MAPFRE causing tortious injury in this Commonwealth.

### III.    THE PARTIES

10.     Plaintiff Capital Crossing is a Delaware limited liability company with its principal place of business at 100 Summer Street, Suite 1150, Boston, Massachusetts 02110. Capital Crossing is a servicer of commercial real estate and commercial loans.

11.     Defendant MAPFRE is a Puerto Rico corporation with its principal place of business at 297 Calle Cesar Gonazlez, San Juan, Puerto Rico 00918-1739.  MAPFRE is an insurance company which conducts business in this Commonwealth and judicial District.

### IV.    FACTS

12.     MAPFRE sold the Policy to Capital Crossing for the period of February 20, 2017 to February 20, 2018.  A true and accurate copy of the Policy (Policy No. 54-CP-200005675-0) is attached hereto as Exhibit A.

13.      Capital Crossing participated in the negotiation of the policy from, and the Policy was delivered to, its headquarters in Boston, Massachusetts.  Furthermore, payments under the Policy are delivered and made payable to Capital Crossing.

14.     The Policy provides insurance coverage for property damage to real estate caused by various perils.

15.     On or about September 20, 2017, Hurricane Maria made a direct hit on Puerto Rico and caused devastating damage to properties insured under the Policy.

16.     Although conditions on the island were very difficult, Capital Crossing provided prompt notice of its losses and began assembling information to support its claim amounts.

17.     Capital Crossing paid all premiums due and owing to MAPFRE pursuant to the Policy, timely reported the losses caused by Hurricane Maria, and has otherwise complied with all conditions of the Policy.

18.     After Hurricane Maria, Capital Crossing engaged an independent claims-adjuster to investigate the Puerto Rico properties and generate detailed loss estimates for each location.

19.     To date, Capital Crossing has submitted 228 claims to MAPFRE and, despite valued losses in excess of $39,600,000.00, MAPFRE's accepted payments barely exceed $2,607,462.62.   A true and accurate copy of a list of these 228 claims is attached hereto as Exhibit B.

**Capital Crossing's Spring 2018 Claims Submissions (March – May 2018)**

20.     Most of Capital Crossing's claims, representing most of its covered losses, were submitted to MAPFRE in the Spring of 2018.

21.     The Spring 2018 claims include 127 claims for a total claim amount of $31,362,415.37, which is more than three-quarters of the entire claim amount.

22.     The Spring 2018 claims included sixteen of the twenty largest claims submitted by Capital Crossing.

23.     Of the $31,362,415.37 amount owed for the Spring 2018 claims, Capital Crossing has accepted checks from MAPFRE, amounting to $2,607,462.62, for only twenty-one of the 127 claims.   MAPFRE has made no payment whatsoever on eighty-three of these claims and unsatisfactory payment on twenty-three claims, for a total of $1,119,488.81.   These payments were not only insufficient, but they were belated having been sent more than a year after the Spring 2018 claims were submitted.

**Capital Crossing's Summer 2018 Claims Submissions (June – August 2018)**

24.     In the Summer of 2018, Capital Crossing submitted an additional forty-seven claims for a total amount of $3,260,918.80.  Of that amount, Capital Crossing has accepted checks amounting to $199,184.14 for nine of the forty-seven claims.  MAPFRE has made no payment whatsoever on thirty of the Summer 2018 claims and unsatisfactory payment on eight of the Summer 2018 claims for a total of $184,728.69.  These payments were not only insufficient, but they were belated having been sent more than eight months after the Summer 2018 claims were submitted.

**Capital Crossing's Fall 2018 Claims Submissions (September – December 2018)**

25.     In the Fall of 2018, Capital Crossing submitted an additional fifty-two claims for a total claim of $5,062,461.49.  Of that amount, Capital Crossing has accepted checks amounting to $1,344,048.85 for two of the fifty-two claims.  MAPFRE has made no payment whatsoever on thirty-two of the Fall 2018 claims and unsatisfactory payments on eighteen of the Fall 2018 claims for a total of $354,539.07.  These payments were not only insufficient, but they were belated having been sent more than four months after they were submitted.

**MAPFRE's Untimely Assignment and Frequent Switching of Claims-Handlers**

26.     Throughout the claims-handling process, MAPFRE has caused unnecessary delays with its untimely assignment and switching of claims-handlers.

27.     MAPFRE failed to assign a claims-handler until several months after Hurricane Maria devastated the properties insured under the Policy.

28.     Once a claims-handler was assigned, MAPFRE periodically switched claims-handlers, significantly delaying the claims-handling process.  Capital Crossing is now dealing with its third claims-handler.

29.     Each replacement in claims-handler has been accompanied by delays while the newly assigned individual becomes familiar with the relevant facts, frequently duplicating work already performed by the previous claims-handler(s).

30.     MAPFRE has offered no explanation for the carousel of claims-handlers assigned to Capital Crossing's claims, which has substantially delayed the claims-handling process.

## Delayed and Inadequate Responses to Capital Crossing

31.     Once engaged, claims-handlers for MAPFRE have been extremely slow to respond to inquiries from Capital Crossing.

32.     Frequently, multiple e-mails have to be sent by Capital Crossing before a claims-handler responds.

33.     Even then, when a response does come, it is often terse and inadequate, or requests information that has already been provided.

34.     MAPFRE has failed to assign claim numbers to more than 100 of Capital Crossing's claim locations.

35.     MAPFRE has delayed inspecting Capital Crossing's insured properties and has misstated the number of joint inspections of these properties.

36.     This conduct has compounded MAPFRE's extreme delay in handling and resolving this claim.

37.     Not only has MAPFRE delayed Capital Crossing's claims process, it has also failed to make payments it promised on certain locations.

38.     For example, MAPFRE promised Capital Crossing it would deliver checks totaling in excess of $3,000,000.00 back in November 2018.  It has to date not paid those amounts, and recently stated that it never actually promised checks.

39.     MAPFRE has improperly asserted that it has a right to place already settled claims in a "reconsideration" process.  This process supposedly involves MAPFRE reevaluating its previously proposed settlement amounts and could result in MAPFRE claiming that it owes Capital Crossing even less than its current inadequate payment amounts.

### MAPFRE's "Late-Reporting" Claims Defense

40.     In a meeting on December 12, 2018, nearly eight months after Capital Crossing submitted its first claim, MAPFRE for the first time contended that Capital Crossing failed to timely report certain property locations to be covered under the Policy.

41.     MAPFRE has improperly contended that certain properties were not insured under the Policy at the time Hurricane Maria hit on September 20, 2017.

42.     Under the terms of the Policy, properties insured under the Policy are reported to MAPFRE at the beginning of a month, and are insured under the Policy effective as of the first day of the prior month.

43.     Notwithstanding MAPFRE's improper assertion, Capital Crossing did, in early October, report to MAPFRE additional properties that were insured under the Policy for the month of September 2017.  MAPFRE issued and Capital Crossing paid the invoice which showed that the properties were covered under the Policy effective September 1, 2017.

44.     Not coincidentally, Capital Crossing's twenty largest claims are among those for which MAPFRE improperly raises its supposed "Late-Reporting" defense.

45.     MAPFRE has even paid on claims that are supposedly subject to this defense, further demonstrating its lack of merit.

46.     MAPFRE has provided no facts to support its allegations that Capital Crossing failed to timely report certain of the insured locations, and the evidence completely refutes this supposed defense.

47.     As recently as April 2019, Capital Crossing sent information to MAPFRE demonstrating and explaining that this defense has no merit.

48.     The endorsements to the Policy, together with Capital Crossing's reporting of the properties, show unequivocally that all locations that suffered damage caused by Hurricane Maria were properly and timely reported and covered under the Policy.

49.     MAPFRE's "late-reporting" coverage defense is meritless.

**MAPFRE's Response to Capital Crossing's Demand Letter**

50.     On April 5, 2019, Capital Crossing sent a letter requesting certain assurances from MAPFRE, specifically that MAPFRE:

(i)     assign a single claims-handler for the remaining duration of Capital Crossing's claims-handling process;

(ii)    withdraw its "Late-Reporting" coverage defense;

(iii)   issue checks for fully adjusted and agreed upon amounts for certain claims;

(iv)    immediately provide full and unconditional agreement that Capital Crossing can cash checks issued by MAPFRE without prejudice to Capital Crossing's continued dispute of the amount of covered losses underlying those claims;

(v)     process and finalize all pending "reconsiderations" within fourteen days; and

(vi)    immediately pay Capital Crossing's first, second, and third claims submissions, which have now been pending for more than a year.

51.     On April 22, 2019, MAPFRE responded to Capital Crossing's April 5, 2019 letter only to say it needed an additional ten days to provide a substantive response.

52.     MAPFRE's substantive response came on May 2, 2019, nearly a month after Capital Crossing's letter, and was wholly inadequate.   For its response, MAPFRE only agreed to assign a single claims-handler for the duration of its handling of Capital Crossing's claim.  It otherwise rejected all of Capital Crossing's requests.

53.     Of particular note is MAPFRE's position regarding the effect of Capital Crossing cashing the checks delivered by MAPFRE.   In its May 2, 2019 letter, MAPFRE asserted that Capital Crossing's cashing of checks would constitute final resolution of those claims and preclude Capital Crossing from seeking the full loss amount of Capital Crossing's claim.    MAPFRE would concede only that cashing the checks would not prevent Capital Crossing from asking MAPFRE to reconsider the amount of the payments. Thus, MAPFRE offered no assurance whatsoever that the checks could be cashed without prejudice to Capital Crossing pursuing its legal rights to the additional amounts owed.

54.     MAPFRE's May 2, 2019 response exemplifies the bad faith tactics used by MAPFRE throughout the claims-handling process.  The timeline for resolution and payment of Capital Crossing's claims remains completely unclear more than eighteen months after Hurricane Maria devastated Capital Crossing's properties.

### COUNT I
### Declaratory Judgment

55.     Capital Crossing repeats and realleges paragraphs 1 through 54, as if fully set forth herein.

56.     Capital Crossing's insured properties have sustained significant damages as a result of Hurricane Maria.

57.     Capital Crossing submitted claims pursuant to the Policy to MAPFRE, including detailed loss estimates, showing that Capital Crossing has suffered insured losses in excess of $39,600,000.00.

58.     Under the terms of the Policy and the implied covenant of good faith and fair dealing, MAPFRE may not unreasonably refuse to pay for losses insured by the Policy.

59.     Capital Crossing repeatedly has demanded that MAPFRE deliver payment for certain of Capital Crossing's claims in the amount of the loss estimates submitted with Capital Crossing's claims.

60.     MAPFRE has refused to issue payment on covered claims and also has improperly denied that certain of Capital Crossing's claims are covered by the Policy, asserting a demonstrably false "Late-Reporting" defense.

61.     Capital Crossing has demanded that MAPFRE withdraw its meritless "Late-Reporting" defense and MAPFRE has refused to do so.

62.     Capital Crossing has demanded that MAPFRE deliver payment for mutually agreed upon settlement amounts for certain of Capital Crossing's claims.

63.     MAPFRE improperly has refused to deliver payment of the mutually agreed upon settlement amounts for certain of Capital Crossing's claims and has denied that it is obligated to do so.

64.     MAPFRE improperly has refused to acknowledge that Capital Crossing can cash checks for undisputed amounts without forfeiting or prejudicing its rights to seek additional amounts owed under the Policy.

65.     Accordingly, an actual controversy exists as to MAPFRE's liability to Capital Crossing pursuant to the Policy.

66.     Capital Crossing is entitled to a judgment against MAPFRE declaring that MAPFRE is liable to Capital Crossing for the full amount of Capital Crossing's submitted and unsettled claims.

67.     Capital Crossing is further entitled to a judgment against MAPFRE declaring that MAPFRE is obligated to deliver payment to Capital Crossing of all mutually agreed upon payments for claims under the Policy.

68.     Additionally, Capital Crossing is entitled to a judgment against MAPFRE declaring that Capital Crossing can cash checks for undisputed amounts without forfeiting or prejudicing its rights to seek additional amounts owed under the Policy.

## COUNT II
## Breach of Contract

69.     Capital Crossing repeats and realleges paragraphs 1 through 68, as if fully set forth herein.

70.     The Policy is, and at all times relevant to this dispute was, a valid and binding contract between Capital Crossing and MAPFRE.

71.     Capital Crossing has performed all of its duties consistent with the terms and conditions of the Policy and has paid all premiums.

72.     MAPFRE breached its contractual obligations under the Policy by failing to honor its terms and refusing to pay the vast majority of Capital Crossing's claims.

73.     As a result of MAPFRE's breach, Capital Crossing has suffered direct and consequential damages, including costs and attorneys' fees in an amount to be determined at trial.

## COUNT III
## <u>Violation of Chapters 93A and 176D</u>

74.     Capital Crossing repeats and realleges paragraphs 1 through 73, as if fully set forth herein.

75.     Capital Crossing is a commercial entity engaged in trade or commerce within the meaning of Mass. Gen. Laws c. 93A and thus is entitled to proceed under Mass. Gen. Laws c. 93A § 11.

76.     MAPFRE is engaged in trade or commerce within the meaning of Mass. Gen. Laws c. 93A.

77.     MAPFRE has committed unfair and deceptive trade practices by, *inter alia*:

   a.     failing to promptly, fairly, and equitably effectuate payment of Capital Crossing's claims, in which liability has become reasonably clear;

   b.     taking months to assign a claims-handler to Capital Crossing's claims and then repeatedly changing claims-handlers, substantially delaying the claims-handling process, with no explanation for doing so;

   c.     failing to assign claim numbers to more than 100 of Capital Crossing's claim locations;

   d.     delaying inspection of Capital Crossing's insured properties and misstating the number of joint inspections of these properties;

   e.     withholding checks which MAPFRE promised to deliver to Capital Crossing in amounts which MAPFRE and Capital Crossing had mutually agreed upon to settle claims submitted by Capital Crossing;

   f.     raising a demonstrably false "Late-Reporting" defense and doing so nearly eight months after Capital Crossing first submitted claims; and

   g.     offering unreasonably low settlement amounts for Capital Crossing's claims and then threatening to rescind even those

settlement amounts to engage in a "reconsideration" process which continues to delay the claims-handling process.

78.    Further evidencing MAPFRE's unfair and deceptive trade practices, MAPFRE has violated Mass. Gen. Laws c. 176D § 3 by, *inter alia*:

    a.    misrepresenting pertinent facts and insurance policy provisions relating to the coverage at issue;

    b.    failing to acknowledge and respond reasonably promptly to claims under the Policy and to communications from Capital Crossing regarding such claims;

    c.    failing to affirm or deny coverage of Capital Crossing's claims within a reasonable time after Capital Crossing submitted its claims;

    d.    forcing Capital Crossing to initiate litigation to recover amounts due under the Policy by offering Capital Crossing substantially less than the amount of Capital Crossing's covered claims under the Policy;

    e.    failing to adopt and implement reasonable standards for the prompt investigation of claims under the Policy;

    f.    refusing to pay claims without conducting a reasonable investigation based on all available information;

    g.    failing to promptly, fairly, and equitably effectuate payment of Capital Crossing's claims, in which liability has become reasonably clear;

    h.    failing to settle claims promptly where liability has become reasonably clear for certain claims in order to influence settlements of other claims; and

    i.    failing to provide promptly a reasonable explanation of the basis in the Policy or in fact for the non-payment or under-payment of claims.

79.    MAPFRE's actions were knowing and willful.

80.    As a direct and foreseeable result of MAPFRE's unfair and deceptive practices, Capital Crossing has suffered loss of money and property.

81.     Based on the foregoing, Capital Crossing has suffered multiple damages, including costs and attorneys' fees, in an amount to be proven at trial.

**COUNT IV**
**Violation of Title 26 Sections 2702 and 2716a**

82.     Capital Crossing repeats and realleges paragraphs 1 through 81, as if fully set forth herein.

83.     To the extent that the law of Puerto Rico applies in this action, MAPFRE has engaged in unfair and deceptive trade and claim adjustment practices and actions in violation of P.R. Laws Ann. tit. 26, § 2702 and 2716a, by, *inter alia*:

    a.    failing to make a rapid, fair, and equitable adjustment of Capital Crossing's claims when responsibility is clearly present;

    b.    failing to investigate and resolve Capital Crossing's claims within 90 days of the claims' submissions;

    c.    failing to assign a claims-handler for months and then repeatedly changing the claims-handler, delaying the claims-handling process;

    d.    inexplicably rescinding settlement amounts offered to Capital Crossing and instituting a "reconsideration" process of those amounts, further delaying the claims-handling process;

    e.    refusing to confirm or deny coverage of claims within a reasonable term;

    f.    belatedly asserting a demonstrably false "late-reporting" defense; and

    g.    forcing Capital Crossing to initiate litigation to recover amounts due under the Policy by offering Capital Crossing substantially less than estimates provided in Capital Crossing's claims submissions and loss estimates.

84.     MAPFRE's actions were knowing and willful or recklessly indifferent to the rights of Capital Crossing.

85.     MAPFRE has failed to articulate and indeed lacks a reasonable basis for denying Capital Crossing's claims.

86.     As a direct and foreseeable result of MAPFRE's unfair and deceptive practices Capital Crossing has suffered multiple damages including costs and attorneys' fees in an amount to be proven at trial.

**COUNT V**
**Breach of Implied Covenant of Good Faith and Fair Dealing**

87.     Capital Crossing repeats and realleges paragraphs 1 through 86, as if fully set forth herein.

88.     Every contract implies good faith and fair dealing between the parties to it. The Policy, at all times relevant to this dispute, was a valid and binding contract between Capital Crossing and MAPFRE and had an implied covenant of good faith and fair dealing.

89.     MAPFRE wrongfully failed to honor its implied covenant of good faith and fair dealing by engaging in the unfair settlement practices described above, including, *inter alia*:

    a.     delaying the claims-handling process by failing to assign a claims-handler and repeatedly changing the assigned claims-handler;

    b.     making unreasonably low settlement offers based on information reasonably available, Capital Crossing's claim amounts, and loss estimates;

    c.     refusing to deliver checks which were promised to Capital Crossing to settle its claims;

    d.     commencing a "reconsideration" process to further delay payment of Capital Crossing's claims and prevent Capital Crossing from cashing the few checks that MAPFRE issued; and

    e.     raising a demonstrably false "late-reporting" claims defense more than eight months after Capital Crossing first submitted claims as part of a concerted effort to delay and avoid payment of Capital Crossing's claims.

90.     MAPFRE's actions have deprived Capital Crossing of the benefits of the Policy, to which Capital Crossing is contractually entitled.

91.     Capital Crossing complied with all of its obligations under the Policy.

92.     MAPFRE's actions were negligent, careless, reckless or vindictive, violated the laws of the Commonwealth of Massachusetts and the Commonwealth of Puerto Rico, and violated MAPFRE's obligations to act in good faith towards, and deal fairly with, Capital Crossing.

93.     As a result of the foregoing, Capital Crossing has suffered multiple damages including costs and attorneys' fees in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Capital Crossing requests the following relief:

A.     Enter declaratory judgment on Count I in favor of Capital Crossing and against MAPFRE, including a declaration that MAPFRE is liable for the full amount of Capital Crossing's submitted and unsettled claims, that Capital Crossing is obligated to deliver payment for all mutually agreed upon settlement amounts to Capital Crossing for its claims, and that Capital Crossing can cash checks for undisputed amounts without forfeiting or prejudicing  its rights to seek additional amounts it believes are owed under the Policy.

B.     Enter judgment on Count II in favor of Capital Crossing and against MAPFRE and award Capital Crossing compensatory damages, consequential damages, and any other pertinent damages, along with attorneys' fees, costs, and pre- and post-judgment interest;

C.     Enter judgment on Count III in favor of Capital Crossing and against MAPFRE and award Capital Crossing compensatory damages, consequential damages, punitive damages, and any other pertinent damages in an amount not less than two nor greater than three

times the amount of the actual damages, along with attorneys' fees, costs, and pre- and post-judgment interest;

        D.      Enter judgment on Count IV in favor of Capital Crossing and against MAPFRE and award Capital Crossing compensatory damages, consequential damages, and any other pertinent damages, along with attorneys' fees, costs, and pre- and post-judgment interest; and assess civil penalties of $10,000.00 against MAPFRE for each and every of MAPFRE's hundreds of violations of P.R. Laws Ann. tit. 26, § 2716a;

        E.      Enter judgment on Count V in favor of Capital Crossing and against MAPFRE and award Capital Crossing compensatory damages, consequential damages, punitive damages, penalties, and any other pertinent damages, along with attorneys' fees, costs, and pre- and post-judgment interest; and

        F.      Grant Capital Crossing such other and further relief as the Court may deem just and proper.

Dated:  May 21, 2019

                           */s/  Marshall Gilinsky*
                           Marshall Gilinsky
                           Anderson Kill, P.C.
                           1251 Avenue of the Americas
                           New York, NY  10020
                           212-278-1000

                           *Attorneys for Plaintiff*